WHITE *v.* MEDAY and another, executors of LEISTNER, deceased.

No part of the ancient and well established jurisdiction of the court of Chancery can be destroyed by the assumption or grant of new powers by statute to courts of law ; and it cannot be taken away, except by the express enactment of the legislature.

Although, by the Revised Statutes, the courts of law can take cognizance and do justice in cases of lost notes yet the jurisdiction of Chancery in the like cases is not gone or affected.

*September* 8, 1835.

*Jurisdiction.*
*Lost note.*
*Statute.*

Bill for the recovery of the amount of a lost promissory note, given by John Christien Leistner to one James Andrews or order on the twentieth day of July one thousand eight hundred and thirty-one, payable in ninety days after date, for the sum of three hundred dollars. The note was endorsed, before it became due, by the said Andrews to the complainant. The endorsement was made in blank and for value received. The note was also handed, before it became due, to one Lewis Shallcross by the complainant, in order that Shallcross might procure the money on it for the complainant's benefit ; and it was lost by Shallcross shortly before or after it fell due.

Several demands had been made of the executors of Leistner for payment of the amount with interest.

The evidence showed, the making of the note—and there was proof of his hand-writing to it ; also, that the complainant came into the possession of it for value received : the loss of it ; and that at the time of commencing suit, the amount of the note was due to the complainant. It appeared also that a bond of indemnity had been tendered.

The defendants, being executors, denied all knowledge of the existence of such a note. And they made two points against the complainant's bill : 1. That the complainant had a full and adequate remedy in the courts of law

and ought to have pursued his remedy there ; and 2. That the bond of indemnity offered and tendered by the complainant to the executors was not, in point of form, security or substance, such as the law required.

Mr. *Van Rensselaer*, for the complainant.

Mr. *Pinckney*, for the defendants.

THE VICE-CHANCELLOR :—The making of the note by the testator, its negociability and the endorsement over by Andrews, the payee, to the present complainant for a valuable consideration, with its subsequent loss while it was the property of the complainant, are facts established by the testimony in the cause beyond contradiction. The defence set up is that the demand is of legal cognizance and can as easily be proved in a suit at law as upon a bill in this court, no discovery from the defendants being necessary to support it ; and that, since the Revised Statutes, a resort to this court, for the purpose of compelling the defendants to pay the note upon receiving an indemnity, is entirely unnecessary —and hence it is contended this court ought not to entertain the bill.

Before the Revised Statutes, it was the settled law of this state (and such is the law in England) that the owner of a lost note could not recover upon it in an action at law, provided it were negotiable and endorsed so that, by possibility, it might get into the hands of a third person who would have a legal right to sue upon it : *Rowley* v. *Ball*, 3 Cowen, 303. ; *Mc. Nair* v. *Gilbert*, 3 Wend. 344. Being subject to a future liability, it was deemed unjust to render a judgment against a defendant unless the note could be produced or shown to be actually destroyed ; and the court could not render a conditional judgment or require the defendant to accept a bond or other security for his protection. Consequently, a complainant was driven into the court of chancery for relief where payment could be decreed conditionally and when the whole matter of indemnity and protection to the defendant could be regulated. In order to obviate the necessity of a resort to equity, provision has been made

by the revised statutes to remedy the defect in courts of law. A plaintiff has now a right to recover in a suit at law upon a lost negotiable note or bill of exchange on proof of its contents and loss, provided he executes a bond in double the amount and with a certain condition, prescribed by the statute, with two sureties, to be approved by the court in which the trial is had; 2 R. S. 406. § 76. Thus courts of law are now just as competent to exercise the equitable power of taking security for the defendant's protection as the court of chancery; and upon such security being given, they are required to render judgment for the payment of the note.

The question then is: whether, as there is no longer any necessity for coming into the court of chancery to enforce the payment of lost notes, this court's jurisdiction is taken away or in any manner restricted or impaired?

There are many cases analagous in principle to show that this court is not to be ousted of its jurisdiction; and I think it is clear that what was an exclusive jurisdiction in this court before the statute is now merely a concurrent one. As a general rule, the extension of the jurisdiction of courts of law to cases which formerly were subjects of equitable jurisdiction exclusively, has not ousted the jurisdiction of courts of equity. Thus, when courts of law agreed to dispense with the necessity of a profert in pleading in a suit upon a bond where a bond was lost or could not be produced, Lord Thurlow held, that it would not take away the jurisdiction which had so long prevailed in equity of giving relief to the holder of a lost bond: *Atkinson* v. *Leonard*, 3 Br. C. C. 218; and see 5 Ves. 238; *Toulmin* v. *Price Ex party Greenway*, 6 Ves. 812; *Brownly* v. *Holland*, 7 Ves. 19. So, in *Wright* v. *Hunter*, 5 Ves. 792, Sir William Grant, M. R. held that, although actions between partners for a contribution had then become frequent, which was formerly always the subject of a bill, it did not affect the jurisdiction of the court of chancery in such cases; and in *Kemp* v. *Pryer*, 7 Ves. 249, Lord Eldon emphatically and significantly asks, upon what principle can it be said the ancient jurisdiction of this court is destroyed because courts of law now

very properly, perhaps, exercise that jurisdiction which they did not exercise forty years ago.

Again: in the subsequent case of *the East India Company* v. *Boddam*, 9 Ves. 463, Lord Eldon entertained a bill against the sureties in a lost bond and decreed payment upon an indemnity being given, although by the modern practice of dispensing with *profert in curia*, a remedy might be had at law upon the bond : but he holds the jurisdiction of courts of equity to be much more convenient and supposes it to have been an exclusive jurisdiction, on the ground of an indemnity being required which courts of law were not familiar with and did not know how to manage. So it would seem, from Lord Eldon's observations in the case last cited and from what has fallen from Lord Hardwicke in *Walmsley* v. *Child*, 1 Ves. 341, on the effect of the statute of 9, and 10, Will. 3 ch. 17. § 3, that, although by that statute there is an extension of the jurisdiction of the courts of law so as to permit the holder of an inland bill of exchange, which he has lost, to recover the amount from the drawer, provided, upon the tender of sufficient security to indemnify the drawer he should refuse to give a new bill in the place of the one lost, yet that chancery retains its wonted jurisdiction as exercised in the time of Lord Nottingham, in *Tercese* v. *Geray*, Finch's R. 301.

It is true that the Revised Statutes have completely remedied the defect in our courts of law and rendered a resort to this court, in cases like the one in hand, unnecessary : yet the legislature have not, in terms, declared that courts of law shall have exclusive jurisdiction or that the jurisdiction of chancery shall cease. The maxim *cessante causa cessat effectus* cannot apply in a matter of this sort or where a jurisdiction is often concurrent in the different tribunals of the state ; and I think the legislature have done no more, in this instance, than to vest the courts of law with a co-ordinate power. It by no means follows that, because courts of law are directed to assume a greater extent of power than they formerly exercised, the court of chancery is thereby deprived of jurisdiction over the same subject matter— a jurisdiction in cases of this sort based as well upon the accidental loss and destruction of written instruments which

forms a ground of equitable relief of itself, as well as upon the inability of courts of law to afford redress upon proper terms, where the claim to redress would be entirely of legal cognizance.

I am satisfied this is the true principle to which the court should adhere, namely, that no part of its ancient and well established jurisdiction can be destroyed by the assumption or grant of new powers to courts of law ; and that it cannot be taken away, except by express enactment of the legislature. Although, in a case like the present, there is no necessity, since the statute, for coming into this court and a suit at law would answer a better purpose, being more expeditious and less expensive, yet it would, perhaps, be unwise even for the legislature to shut the doors of chancery against a suitor upon a lost note. Sometimes a discovery by bill may be necessary to aid the plaintiff in proving the contents of a lost note ; and when this court has jurisdiction for this one purpose, it had better retain it, in order, in a proper case, to give relief.

These are the views I entertain ; and I shall not turn the complainant over to seek redress elsewhere. But still, there is no good reason given and none I think can be assigned why the complainants did not pursue his remedy against the executors (the present defendants) in a court of law—as he did in the first instance against the testator in his lifetime where he suffered a non-pross in consequence of not furnishing security for costs. I am, therefore, disposed not to allow the complainant his costs of the present suit. The executors could not, in safety to themselves, have paid the amount claimed upon the *ex parte* proofs submitted for their inspection before this suit was instituted. They had no personal knowledge of the existence of the note or other information of the justice of the claim. Besides, the bond which was tendered for their indemnity appears not to have been so full as the statute requires. I cannot say they have unreasonably resisted or neglected the payment of this demand, and, consequently, they are within the equity of that provision in the statutes which exempts them and the property in their hands from the complainant's costs: 2 R. S. 90, § 41.

Decree : for the payment of the principal and interest of

the note, to be computed by a master, upon the complainant executing a bond of indemnity pursuant to the statute and to be approved of by the same master.